Kevin O'CONNELL, Appellant,

v.

Kathleen E. CHRISTENSON (f/k/a Lutz), Appellee.

No. S–10626.

Supreme Court of Alaska.

Aug. 15, 2003.

---

**1038**

Peter LeBlanc, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellant.

No brief filed by Appellee Kathleen E. Christenson.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

Kevin O'Connell appeals a superior court order that imputed income to him and modified his child support obligation accordingly. Because the superior court failed to issue findings sufficient to justify the imputed income, we vacate the court's order and remand the case for further proceedings.

## II. FACTS AND PROCEEDINGS

Kevin O'Connell and Kathleen Christenson are the parents of two children. O'Connell and Christenson were never married and never resided together with the children. O'Connell lives in Anchorage. Christenson resides near Fairbanks.

In May 1999 the superior court awarded sole legal and primary physical custody of the children to Christenson and established a visitation schedule for O'Connell. In September 1999 the superior court issued a child custody and support order setting out the child support obligation of the parties. The court required O'Connell to pay Christenson $62 per month in child support based on a net annual income of $4,605. At the hearing that yielded this order, the court declined Christenson's request to impute income to O'Connell because, according to the court, it lacked a basis for doing so. The court did require O'Connell to pay all visitation costs in return for setting the child support payment so low.

The subject of this litigation is a subsequent superior court order issued after Christenson filed a motion to change support and visitation. In that motion, Christenson sought to modify the visitation schedule, impute income to O'Connell, and modify his child support obligation. O'Connell filed an opposition to this motion and a cross-motion to modify custody. He claimed his adjusted annual income for 2001 was $8,185.38. In April 2002 the superior court held a hearing on these motions and issued an order a few days later. At the hearing, the court ruled that it would impute an income of $40,000 to O'Connell and modify his child support to reflect this change. In its order, the court imputed an income of $43,550.13 to O'Connell and calculated his monthly child support obligation to be $714.83. The order also called for the parties to split equally the transportation costs for visitation. O'Connell appeals the change in child support and the superior court's decision to impute to him an income of $43,550.13.

## III. DISCUSSION

### A. Modifying Child Support

O'Connell argues that the trial court erred in modifying his child support obligation absent a material change in circumstances.

#### 1. Standard of review

■ We review a trial court's decision to

modify child support for abuse of discretion.[1] We find an abuse of discretion only when "we are 'left with a definite and firm conviction that a mistake has been made.' "[2]

### 2. Change of circumstances presumed

Alaska Civil Rule 90.3 permits a modification of a child support order "upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order."[3]

Under the child support order in effect prior to the modification, O'Connell was required to pay Christenson $62 per month. The new support obligation as calculated under Rule 90.3 is $714.83 per month.

Because the support as calculated is 1,053% greater than the outstanding support order, a change of circumstances is presumed. The decision to alter child support based upon a change of circumstances would therefore not be an abuse of discretion if the amount of imputed income is justified. However, because we conclude that the amount of imputed income to O'Connell is not supported by adequate findings, we vacate the child support order.

### B. Imputing Income

■ O'Connell contends that it was error for the trial court to impute income to him. He claims that the court abused its discretion when the court found that he was underemployed[4] and when it determined his potential income without issuing findings in support of the decision to do so. O'Connell also claims that the record does not support the trial court's order imputing to him an income of $43,550.13.

### 1. Standard of review

■ We review decisions to impute income for abuse of discretion.[5] The determination of imputed income is a finding of fact that we will overturn only if clearly erroneous.[6] "A finding is clearly erroneous if it leaves us with a 'definite and firm conviction on the entire record that a mistake has been made.' "[7]

### 2. The decision to impute income

Rule 90.3 provides the trial court with the power to

> calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed.... Potential income will be based upon the parent's work history, qualifications, and job opportunities. The court also may impute potential income for non-income or low income producing assets.[8]

The commentary to the rule adds that "[t]he court shall consider the totality of the circumstances in deciding whether to impute income. When a parent makes a career change, this consideration should include the extent to which the children will ultimately benefit from the change."[9] The voluntariness of a person's underemployment should be taken into consideration in determining whether to impute income.[10]

---

1. *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002).

2. *Id.* (quoting *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000)).

3. Alaska R. Civ. P. 90.3(h)(1).

4. O'Connell notes that the trial court's order does not state that the court found him to be underemployed. He makes this claim assuming that such a finding is implicit in the court's decision to impute income.

5. *See Rhodes v. Rhodes*, 754 P.2d 1333, 1335 (Alaska 1988).

6. *Lacher v. Lacher*, 993 P.2d 413, 423 n. 34 (Alaska 1999) (citing *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998)).

7. *Dunn*, 952 P.2d at 270 (quoting *R.F. v. S.S.*, 928 P.2d 1194, 1196 n. 2 (Alaska 1996)).

8. Alaska R. Civ. P. 90.3(a)(4).

9. Alaska R. Civ. P. 90.3 cmt. III.C.

10. *See Robinson v. Robinson*, 961 P.2d 1000, 1004 (Alaska 1998).

O'Connell claimed that his adjusted annual income in 2001 was $8,185.38, an increase from the past few years. He stated that he had worked as a commercial fisherman from the age of eighteen until suffering a knee injury in December 1997. The court inquired into O'Connell's job skills, took note of his associate's degree "in the computer industry," and heard testimony relating to two businesses that O'Connell owns: a computer business and a collection agency. The court also heard testimony about various assets owned by O'Connell including a 1988 Corvette, a 1997 F–150 pickup truck, a nineteen-foot Bayliner boat, two condominiums in Anchorage, and lake-front property in Big Lake.

The comparative plenitude of O'Connell's assets may place in question the accuracy of his income affidavits. But whether O'Connell is underemployed ultimately depends on the jobs available to him, given his physical ability and training, and what he might earn in such jobs.

### 3. Findings to support imputing income

■ A trial court has a duty to enter findings adequate for rational appellate review when it sets a child support obligation.[11] This is no less true with regard to the imputed income from which the amount of the obligation is derived. In *Nass v. Seaton*, we remanded the case to the trial court to make more detailed findings and conclusions regarding its determination of imputed potential income.[12] The trial court had determined that the father in *Nass* was voluntarily underemployed and imputed an income to him of $45,000.[13] The court had reached this figure after citing the father's "reported in-

come, his potential income, the gifts from his father of $20,000 per year, and the value of his extraordinarily low business and living expenses . . . ."[14] On appeal, we first determined that it was not clearly erroneous to find that the appellant was voluntarily underemployed.[15] With regard to imputing income, we noted the difficulty faced by a court in determining child support figures based upon the imputed potential income of a voluntarily underemployed parent.[16] Nevertheless, we stated, "on remand it is incumbent upon the trial court to enter sufficiently detailed findings of fact which disclose its methodology, as well as the factual basis, for its determination of the appropriate imputed potential income level for the obligor-parent."[17]

In *Olmstead v. Ziegler*, we found that the trial court adequately supported its conclusion that both parents had equal earning capacities despite one parent's voluntary decision to change professions.[18] The father in *Olmstead* argued that the trial court had failed to provide explicit findings and a basis or calculations for its decision to impute income.[19] We responded by noting that the trial court's methodology was clear—both parents were attorneys and the potential income for the parent leaving the legal profession was equal to that of the parent remaining in legal practice.[20]

In *Dunn v. Dunn*, we upheld a superior court's conclusion that a father was underemployed and the methodology it used to reach an imputed income for child support purposes.[21] The superior court imputed an income of $30,000 to the father and supported this decision with references to the father's investments and his home ownership.[22] The record also showed that the father had volun-

---

11. *See, e.g., Berkbigler v. Berkbigler*, 921 P.2d 628, 631 (Alaska 1996); *Waggoner v. Foster*, 904 P.2d 1234, 1235 (Alaska 1995); *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992).

12. 904 P.2d 412, 418–19 (Alaska 1995).

13. *Id.* at 417 & 418 n. 12.

14. *Id.*

15. *Id.* at 417.

16. *Id.* at 418–19.

17. *Id.* at 419.

18. 42 P.3d 1102, 1106–07 (Alaska 2002).

19. *Id.*

20. *Id.* at 1107 n. 16.

21. 952 P.2d 268, 271 (Alaska 1998).

22. *Id.*

tarily retired, was in his early fifties, and spent his time building houses.[23]

In the instant case, the trial court's order modifying child support imputed an income of $43,550.13 to O'Connell. The court did not issue written findings. At the conclusion of the testimony at the hearing, the court noted that O'Connell might earn "about 20,000 a year" if he worked at McDonalds and that he was capable of doing work substantially more remunerative than that. The court concluded that, "minimally [O'Connell] could be expected to earn $40,000, if he put himself on the job market, and I think that's at the very low end of what could be expected. I'm going to impute income in the amount of $40,000 a year...."[24] The court also stated that it had "effectively intended" to impute income to O'Connell "three years ago" when the court imposed a monthly child support obligation of $62, coupled with a requirement that O'Connell pay for all of the costs associated with visitation.[25]

Other than the reference to the possibility of O'Connell's employment in the fast food industry and its statement that it would "approach things in the traditional manner," the court did not provide any rationale for its decision as to the amount of imputed income.[26] The court's rationale appears to be based on an estimation of O'Connell's likely income were he to abandon his businesses and find employment in the job market. The court's starting point seems to have been that a person working at a fast food counter would earn $20,000 in a year. If a person worked forty hours per week for fifty weeks in a year, and earned $10 per hour, that person would have a gross annual income of $20,000.[27] However, it is not clear that fast food employees receive $10 per hour, or that O'Connell is physically capable of such work. Most importantly, it is not clear that employment opportunities exist in Anchorage that would pay twice this figure to O'Connell.

Rule 90.3 directs a court imputing potential income to a parent to base its determination "upon the parent's work history, qualifications, and job opportunities. The court also may impute potential income for non-income or low income producing assets."[28] The absence of specific findings that justify imputing either $40,000 or $43,550.13 of income to O'Connell renders it impossible for this court to determine whether the court was clearly erroneous in its imputation decision. For this reason, we vacate the child support award and remand the question of imputed income. On remand the court may impute income to O'Connell in an amount supported by appropriate findings as to O'Connell's physical abilities and qualifications, the employment opportunities available to him, and what he should earn from them. The court may find it useful to refer to the Alaska Department of Labor wage statistics for guidance in determining the amount of income to impute to O'Connell. The Child Support Enforcement Division (CSED) sometimes utilizes these statistics to determine a parent's total income from all sources.[29] The court is authorized to hold a

---

**23.** *Id.*

**24.** In the order there is no explanation for the increase in imputed income from $40,000 to $43,550.13 between the hearing and the order. The child support affidavit filed by O'Connell in January 2002 lists rental income in the amount of $1,650.13 and an Alaska Permanent Fund Dividend in the amount of $1,850. These figures add up to $3,500.13. The court likely imputed income from O'Connell's labor to be $40,000 and added the rental income and dividend. This would account for all but $50 of the discrepancy. However, this possible explanation is only a guess.

**25.** The transportation costs were substantial given O'Connell's residence in Anchorage, Christenson's residence near Fairbanks, and a requirement that the children only be transported by air.

**26.** The court did further describe the compromise in its earlier order that set child support at the poverty level in return for O'Connell agreeing to accept the expense of visitation. The court then ordered that henceforth the parents will split visitation costs.

**27.** The adjusted annual income on which child support is based would be somewhat less. *See* Alaska R. Civ. P. 90.3(a)(1).

**28.** Alaska R. Civ. P. 90.3(a)(4).

**29.** 15 AAC 125.050(a) provides that when CSED is unable to obtain accurate financial information "the agency will use the best information available, including any information available to it through automated sources such as information maintained by the Department of Labor and Workforce Development, to determine the par-

supplemental evidentiary hearing if, in its discretion, it believes that such a hearing will be necessary or useful.

## IV. CONCLUSION

We VACATE the child support order issued by the superior court and REMAND the case for further proceedings in accordance with this opinion.

ent's total incomes from all sources." Another section of the regulations that specifically relates to imputing potential income for individuals determined to be voluntarily unemployed or underemployed directs CSED to "determine potential income by considering, based on available information, the parent's past income, skills, work history, and education, and the job opportunities in the area where the parent physically resides." 15 AAC 125.020(b).