*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRIAN D. PETRILLA, | ) | |
| | ) | Supreme Court No. S-14926 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-01-08216 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ROXANA N. PETRILLA, | ) | |
| | ) | No. 6799 – July 19, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Brian D. Petrilla, pro se, Henderson, Nevada, Appellant. Roxana N. Petrilla, pro se, Anchorage, Appellee.

Before: Fabe, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Stowers, Justice, not participating.]

FABE, Chief Justice.

I.      INTRODUCTION

After a father left his job with the State of Alaska and moved to Nevada, leaving the mother with primary physical custody of their daughter, the child's mother filed a motion to modify child support. The superior court ordered a modification and imputed income to the father under Alaska Civil Rule 90.3(a)(4) after concluding that the father appeared unmotivated to find employment because he was apparently content

to collect unemployment benefits. The superior court also expressed concern that the father had not sufficiently planned for how he would meet his child support obligations in the event that he could not find work in Nevada. The father subsequently found a state job in Nevada that paid substantially less than his imputed income, and he moved to modify and reduce his child support obligation. The superior court denied the father's request and the father now appeals, arguing that the superior court abused its discretion in imputing income, erred in the amount that it imputed, and abused its discretion in denying his motion to modify his child support obligation. Because we conclude that the superior court did not provide a sufficient factual basis for its denial of the father's motion to modify child support, we vacate the superior court's order denying the father's request to modify and remand this case for further proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

Brian Petrilla and Roxana Petrilla were divorced in October 2001. They agreed to jointly share legal and physical custody of their daughter. This arrangement continued until August 2011 when the child started living exclusively with Roxana.

In the fall of 2011 Brian began making plans to move with his new wife, their six-year-old daughter, and his in-laws to Henderson, Nevada to be closer to Brian's mother and terminally ill father who lived in Tucson, Arizona.

On January 17, 2012, Roxana filed a petition in the superior court to modify custody in which she sought sole legal and primary physical custody of their daughter. Roxana also sought to modify the parties' child support arrangement so that Brian would pay child support.[1]

---

[1] Under the terms of a 2010 child support modification order, Roxana paid Brian $37 each month.

On February 1 Brian resigned from his position as a juvenile probation officer with the State of Alaska and moved to Nevada. Roxana subsequently filed a motion to impute Brian's income from 2011 for the purpose of calculating child support. Roxana argued that Brian had the capacity to earn at least $58,984.50, the amount of his gross wages from the State of Alaska for 2011.

Brian did not oppose Roxana's child custody request but he opposed her request to impute income. Although he was not working, Brian argued that he was not voluntarily or unreasonably unemployed and that imputation of potential income under Alaska Civil Rule 90.3 was therefore improper.[2] He contended that there was good cause for his family to relocate so that they could be closer to his ailing father, and he argued that his child support obligation should instead be calculated based on his "current [u]nemployment [i]nsurance . . . with the understanding that [he would] immediately provide [his] new income information upon gaining employment in the State of Nevada."

The superior court scheduled an evidentiary hearing for May 31. In anticipation of the hearing, Brian filed an employment status update in the superior court that detailed his job search efforts.

Both parties testified at the May 31 hearing. Roxana argued that the superior court should impute Brian's Alaska wages. She contended that her own research demonstrated that there were jobs open in Nevada with salaries comparable to what Brian had earned in Alaska. She also argued that Brian had unreasonably delayed

---

[2]        Rule 90.3(a)(4) provides, in relevant part, that "[t]he court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed. . . . Potential income will be based upon the parent's work history, qualifications, and job opportunities." Alaska R. Civ. P. 90.3(a)(4).

finding a new job and that he should have taken steps to plan for his child support obligation in advance of the move.

Brian testified that he voluntarily quit this job as a juvenile probation officer so that he could move to Nevada with his new wife, their daughter, and his in-laws to be closer to his parents in Arizona. Brian testified that he had not worked since arriving in Nevada. He also testified that nobody in his household was employed, and that the household's income was based solely on his and his wife's unemployment benefits, which would end in July and August, respectively.

Brian testified that he had planned to provide child support for his daughter in Alaska from his savings until he got a job, but that the job search had taken longer than he anticipated. He noted that he had submitted an application for a juvenile probation officer position with the State of Nevada before he left Alaska and had believed he had a good chance of getting that job but that he "didn't make the cut." Brian testified that since arriving in Nevada he had limited his job search to public service jobs and had not applied to retail or food service positions even though these jobs were available. He explained that his plan was to apply to higher-paying public service jobs while he had unemployment benefits and then to apply to lower-paying service industry jobs after his unemployment benefits expired in July. He also testified that he had hoped to find a job comparable to what he had in Alaska and that he applied for "everything that [he] qualified for," but that salaries in Nevada were "significantly less" than in Alaska.

Brian contended that he did not meet the minimum qualifications for many of the jobs Roxana identified in her research, including those paying over $45,000, because he did not have a bachelor's degree. He also maintained that competition for lower-paying public service jobs was high. But Brian noted that he had the qualifications for all of the jobs listed on his employment status update, even those that

advertised for candidates with bachelor's degrees, because the positions allowed applicants to substitute relevant work experience for advanced education.

The superior court acknowledged that "there is certainly a period of transition time when having unemployment income would be necessary" to off-set the cost of an out-of-state move. But it also expressed confusion as to why Brian would "use all of [his] unemployment insurance before . . . seriously looking for a job." The superior court explained that it appeared that Brian was comfortable with the $3,000 per month in unemployment benefits that he and his wife received, and that Brian seemed to have "no motivation to get out there and earn more."

The superior court ordered a modification of Brian and Roxana's standing child support order, but it declined to impute a salary equivalent to Brian's Alaska wages, stating that it would "have to find that [Brian] was moving or voluntarily underemploying himself," which it did not find to be the case. Instead, the superior court ordered that during the period of September 1, 2011 to January 30, 2012, Brian's child support should be calculated based on his annual income of $58,000 from his employment with the State of Alaska. The superior court then ordered that Brian's child support for the period of February 1, 2012 to June 30, 2012 should be calculated based upon his unemployment income of $1,576 per month. Finally, as of July 1, 2012, the superior court imputed to Brian an annual income of $44,387, "based on his training, education, and qualifications." This amount represented the annual salary of a juvenile probation officer with the State of Nevada. The superior court explained that it chose to impute income in part based on "the lack of planning on [Brian's] part."

The superior court issued its written order on June 5, 2012. Brian submitted a motion for reconsideration on June 11. He contended that the amounts ordered did not correspond to the superior court's verbal order from the May 31 hearing.

On June 26, 2012, the superior court issued a new child support order, which reflected the time periods and support amounts ordered at the May 31 hearing.

On June 30 Brian submitted a motion to modify child support based on new employment. He included a letter from the State of Nevada, Division of Welfare and Supportive Services, offering him the position of family services specialist with an anticipated start date of July 23. Brian also attached the job announcement listing the "approximate annual salary" for the position at "$33,199.20 to 48,462.48." Roxana opposed Brian's motion to modify child support. She argued that Brian had not provided pay stubs or a tax return to verify his new income. The superior court denied Brian's motion as premature, concluding that "[t]he modification cannot and will not be considered until the plaintiff can provide pay stubs and any other income information to be considered by the court. The court will not issue an anticipatory order."

On September 14 Brian submitted a second motion for modification of child support based on new employment income. He reiterated his request that the superior court calculate his child support using his actual salary of $33,072, rather than the imputed income of $44,387. Brian included a letter from the State of Nevada, confirming that he had worked as a family services specialist with the agency since July 23 and that his gross base pay was $636 per week. Brian also provided pay stubs dating back to his start date of July 23.

On October 9 the superior court denied Brian's request to modify child support based on his new employment and income. The superior court reasoned that Brian had

> waited until the court imputed a higher income than his unemployment to go get a job. Clearly he could have been earning more than twice his unemployment income had he

made the effort. Based on the evidence presented [at] the hearing on May 31, 2012, the court declines to reconsider or modify its early finding regarding [Brian's] earning capability.

Brian now appeals two primary issues, arguing that the superior court abused its discretion by imputing his income at $44,387 and that the superior court abused its discretion in denying his motion to modify child support after he demonstrated a material change in circumstances, specifically that he had secured new employment at a salary substantially less than the imputed amount. Roxana argues that Brian has the education and qualifications to seek and obtain a higher-paying job and therefore the superior court did not err or abuse its discretion in imputing Brian's income at $44,387 and denying his motion to modify.

## III. STANDARD OF REVIEW

"Trial courts have broad discretion in deciding whether to modify child support orders."[3] We review a trial court's determination whether to modify child support for abuse of discretion.[4] A trial court's decision to impute income is also reviewed for abuse of discretion.[5] We will find an abuse of discretion when a review of the record as a whole leaves us with a "definite and firm conviction . . . that a mistake has

---

[3] *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002) (citing *Patch v. Patch*, 760 P.2d 526, 529 (Alaska 1988)).

[4] *Id.* (citing *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000)).

[5] *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 473 (Alaska 2012) (citing *O'Connell v. Christenson*, 75 P.3d 1037, 1039 (Alaska 2003)).

been made."[6] A trial court's determination of the amount of a party's "imputed income is a factual finding that we review for clear error."[7]

## IV. DISCUSSION

### A. Brian Failed To File A Timely Appeal Of The Superior Court's June 26, 2012 Child Support Order And Initial Imputation Of Income.

Brian first contends that there was no basis for the superior court to impute income to him because he was not voluntarily and unreasonably unemployed or underemployed. He also argues that the superior court erred in imputing income at the amount of $44,387. Brian did not appeal the superior court's June 26, 2012 order imputing income. Instead, on June 30, he moved to modify the child support award on the basis that he had found employment working for the State of Nevada as a family services specialist. He requested that his adjusted income be based on his actual salary rather than the imputed amount. He has appealed the October 9, 2012 denial of his motion to modify. Having elected to forgo a timely appeal of the June 26, 2012 order,[8] he cannot challenge that order now in the context of an appeal of the denial of modification.

---

[6]     *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001) (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1370 (Alaska 1991)) (internal quotation marks omitted).

[7]     *Helen S.K.*, 288 P.3d at 473 (citing *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008)).

[8]     Alaska Appellate Rule 204(a)(1) requires notice of appeal to be filed within 30 days of the date shown on the clerk's certificate of distribution on the order being appealed. The clerk's certificate of distribution for the June 26, 2012 child support order was dated June 27, 2012. Brian therefore had 30 days from June 27 to file a notice of appeal, but he did not file this appeal until October 17, 2012, more than 100 days after the date shown on the clerk's certificate of distribution.

**B.** **The Superior Court Did Not Provide A Sufficient Factual Basis For Its Decision To Deny Brian's Motion To Modify Child Support.**

On June 29, 2012, just three days after the superior court entered its June 26 order imputing income of $44,387 to Brian, Brian received a firm job offer to work as a family services specialist for the State of Nevada. Brian's salary for that position is $33,072. On June 30, 2012, Brian moved to modify the superior court's child support order entered on June 26, 2012, requesting that the superior court base his child support obligation on the salary for his recently obtained employment and not the imputed amount of $44,387. The superior court's order denying Brian's request to modify his child support obligation to reflect the actual income of his new position was based on the superior court's view that Brian waited until the superior court imputed income before seriously seeking a new job. Moreover, the superior court declined to reconsider or modify its earlier finding regarding Brian's earning capacity in light of his actual income in his new position. Brian argues that the superior court abused its discretion[9] in declining to modify his child support obligation after he submitted verification of this new Nevada employment and the required salary information.

In effect, the superior court concluded that Brian was voluntarily and unreasonably underemployed even after he secured full-time employment as a family services specialist for the State of Nevada. The superior court seemed to have based this conclusion on the ground that Brian delayed finding a job until his unemployment benefits expired and income was imputed to Brian. But the superior court made no

---

[9]     Brian argues that the superior court's decision not to modify child support should be reviewed de novo. But we have previously held that trial courts have broad discretion in deciding whether to modify child support orders. *Richardson v. Kohlin*, 175 P.3d 43, 46 (Alaska 2008) (citing *Olmstead*, 42 P.3d at 1104). And we review a decision by the superior court to modify child support for an abuse of discretion. *Id.*

express finding that Brian was capable of earning more than his new job paid,[10] that higher-paying jobs were available to Brian in Nevada,[11] or that Brian took a position paying less than what was available.[12] Brian now argues that paying child support calculated on his imputed income creates an undue hardship on his family in Nevada and that he would have to earn a salary of approximately $59,000 with the State of Nevada to "justify" his monthly support obligation of $627.[13]

---

[10]    *See Olmstead*, 42 P.3d at 1105 (concluding that the record supported the trial court's view that the father was not working at his full capacity after he "took many steps, including closing his office and failing to keep regular business hours that demonstrated his intent to downsize his practice"); *see also Nass v. Seaton*, 904 P.2d 412, 417-18 (Alaska 1995) (holding that the superior court did not err in finding a father voluntarily and unreasonably underemployed where the father acknowledged that there was machinist work available to him, but he did not advertise and chose to keep "a low profile"); *Pugil v. Cogar*, 811 P.2d 1062, 1066-67 (Alaska 1991) (concluding that the trial court did not err in finding that the father "has the capacity" to work as a commercial fisherman in the summer in Alaska while also pursuing higher education out of state).

[11]    *See O'Connell v. Christenson*, 75 P.3d 1037, 1041 (Alaska 2003) (remanding to the trial court for additional findings after concluding that "it is not clear that employment opportunities exist in Anchorage" that would pay the father's imputed income).

[12]    *See Sawicki*, 186 P.3d at 550-51 (concluding that the trial court did not err in deciding that it was unreasonable for the mother to leave a position paying twice as much as her new salary); *see also Pugil*, 811 P.2d at 1066-67 (concluding that the superior court did not abuse its discretion in imputing income to a father who left a lucrative commercial fishing career to pursue a lower-paying job in welding).

[13]    Brian reports his child support obligation as $697 in his briefing. This figure omits a health insurance adjustment, which brings his monthly obligation to $627.

Alaska Civil Rule 90.3(h)(1) allows for modification of a child support award "upon a showing of a material change in circumstances."[14] We have held on many occasions that the trial court must provide sufficient factual findings to enable appellate review.[15] For example, in *O'Connell v. Christenson*, the superior court imputed a father's income at $40,000 after it noted that the father "might earn 'about 20,000 a year' if he worked at McDonald[']s and that he was capable of doing work substantially more remunerative than that."[16] The superior court concluded that "minimally [the father] could be expected to earn $40,000, if he put himself on the job market" and that this income was "at the very low end of what could be expected."[17] We concluded that these findings were insufficient to allow our review because "[o]ther than the reference to the possibility of [the father's] employment in the fast food industry and [a] statement that it would 'approach things in the traditional manner,' the court did not provide any rationale for its decision as to the amount of imputed income."[18] We also noted that it was "not clear that employment opportunities exist in Anchorage that would pay twice

---

[14] The parties do not dispute that there was a material change in circumstances when Brian secured his new employment with the State of Nevada.

[15] *See Richardson v. Kohlin*, 175 P.3d 43, 48 (Alaska 2008); *see also Bird v. Starkey*, 914 P.2d 1246, 1249 (Alaska 1996) (holding that the trial court must make sufficient findings of fact "so that a reviewing court may clearly understand the grounds on which the lower court reached its decision"); *Nass*, 904 P.2d at 419 (remanding for sufficiently detailed factual findings which disclose the trial court's methodology as well as factual basis for determining the income level to be imputed).

[16] 75 P.3d at 1041.

[17] *Id.* (internal quotation marks omitted).

[18] *Id.*

[the estimated annual income of a food service worker]."[19] On remand, we instructed the superior court to impute income to the father "in an amount supported by appropriate findings as to [the father's] physical abilities and qualifications, the employment opportunities available to him, and what he should earn from them."[20]

We conclude in this case that the superior court did not provide a sufficient factual basis for its denial of Brian's motion to modify child support. Brian received his job offer from the State of Nevada on June 29, 2012. Although Brian may have delayed starting his job search, the superior court presumably took this into consideration when it calculated Brian's child support obligation for the period of February 1, 2012 to June 30, 2012 using his unemployment benefits. And Brian applied for the family services specialist position on April 14, 2012 and took a qualification exam for the job on May 8, 2012. Thus Brian had to wait six weeks before he was offered the position. But it is unclear from the superior court's decision how Brian's delay in searching for work between February and April 2012 affects the question whether his current job and its salary accurately reflect Brian's earning potential. As was the case in *O'Connell*, the superior court did not make any specific findings as to the employment opportunities available to Brian at the time he moved to modify child support to reflect his actual, rather than imputed, income. And the record before us does not reflect the availability of employment opportunities in Nevada that would have paid Brian more than the position he secured.[21]

---

[19]     *Id.*

[20]     *Id.*

[21]     We also note that at the May 31 hearing the superior court determined that Brian "may have to work one or two jobs" to meet his imputed income level. But Brian's position as a family services specialist with the State of Nevada is similar in

(continued...)

The superior court based its decision to deny modification on the testimony at the May 31, 2012 hearing. But at that time, Brian reported to the superior court that he had applied for and was denied the juvenile probation officer position with the State of Nevada, and that he had applied for and was waiting for a response from the State of Nevada on the family services specialist position that he ultimately accepted. Brian also testified at the May 31 hearing that he had applied to "everything that [he] qualified for," but that salaries in Nevada were "significantly less" than in Alaska, and that competition for jobs was high. In light of the record, and the lack of factual findings in the superior court's order as to alternative, more lucrative job opportunities available to Brian at the time he moved to modify, we remand this case to the superior court for more detailed factual findings.

Brian also argues that he would have to earn over $59,000 to realistically account for his monthly support obligation of $627 based on furloughs and retirement contributions mandated for employees of the State of Nevada. Brian and Roxana dispute whether Brian should be allowed to deduct mandatory retirement contributions, health insurance, and furlough days from his child support obligation. Because the superior court denied Brian's motion to modify child support without reaching the question of these proposed deductions, this issue is not properly before us.[22] On remand we assume

_____

[21](...continued)
many respects to his former position as a juvenile probation officer with the State of Alaska. Both are full-time, professional, public service jobs. Although the starting salary for a family services specialist in Nevada is less than that of a juvenile probation officer in Alaska, without evidence that Brian declined other higher-paying jobs, we are not persuaded that Brian should be expected to find a second night job to supplement his income under the facts of this case.

[22]      *See Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006) ("[C]ourts should not resolve abstract questions or issue advisory opinions." (quoting *Trustees for Alaska* (continued...)

that the superior court will consider whether these deductions fall within the guidelines of Rule 90.3.

## V.    CONCLUSION

We VACATE the superior court's order denying Brian's request to modify child support and REMAND this case to the superior court for further proceedings consistent with this opinion.

---

[22](...continued)
*v. State*, 736 P.2d 324, 327 (Alaska 1987)) (internal quotation marks omitted)).