*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| MARK HORNE, | ) | Supreme Court No. S-15337 |
|  | ) |  |
| Appellant, | ) | Superior Court No. 3AN-08-05233 CI |
|  | ) |  |
| v. | ) | O P I N I O N |
|  | ) |  |
| BELINDA TOUHAKIS, | ) | No. 7030 – August 14, 2015 |
|  | ) |  |
| Appellee. | ) |  |
|  | ) |  |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Mark Horne, pro se, Anchorage. No appearance by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I. INTRODUCTION

A child support obligor asked the superior court to reduce his child support obligation to the legal minimum after several of his business ventures failed. During an evidentiary hearing, the obligor conceded that it would be fair to base his child support obligation on imputed income, and he estimated that he could earn a gross annual income of about $40,000 if he sought and obtained full-time employment. The superior court concluded that the obligor underestimated his earning potential, and the court imputed

income to the obligor at twice the obligor's income estimate.  Because the court's findings were insufficient to allow us to review its imputed income determination, we vacate and remand.

## II.    FACTS AND PROCEEDINGS

Mark Horne and Belinda Touhakis were romantically involved for several years in the mid 2000s, though they never married and produced no biological children together.  During their relationship, Touhakis adopted a daughter.  When Horne and Touhakis ended their relationship, Horne requested custody and visitation rights as a psychological parent;[1] he simultaneously offered to provide child support.  Touhakis initially opposed Horne's continued involvement in her daughter's life, but the parties eventually settled in 2009.  Under the terms of the settlement, the parties agreed that Horne had established a psychological parent relationship with Touhakis's daughter and would have six-day-long visitation rights every 21 days.  They also agreed that Horne would pay Touhakis $1,750 monthly in child support under Alaska Civil Rule 90.3.

Horne is a self-employed entrepreneur, and several of his projects and investments began losing money shortly after the settlement.  In his 2010-2012 tax filings, Horne reported adjusted gross losses of $87,731, $189,774, and $446,632.  In

---

[1]    A psychological parent is:

one who, on a day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills the child's psychological need for an adult.  This adult becomes an essential focus of the child's life, for he is not only the source of the fulfillment of the child's physical needs, but also the source of his emotional and psychological needs.

*Carter v. Brodrick*, 644 P.2d 850, 853 n.2 (Alaska 1982) (quoting Max F. Gruenberg, Jr. & Robert D. Mackey, *A New Direction for Child Custody in Alaska*, 6 U.C.L.A.-ALASKA L. REV. 34, 36 (1976)).

late 2012 he asked the superior court to modify his child support obligation to the legal minimum of $50 per month.[2]

The court held an evidentiary hearing, where Horne was represented by counsel and Touhakis appeared pro se. Horne submitted his 2010-2012 tax returns, testified about his financial situation, and called his accountant to the stand to verify the accuracy of his tax returns. Horne testified that he had not held a traditional job in approximately 20 years but that in early 2000 he had earned about $35,000 as an operations manager for a stevedore company. He further testified that, in light of his recent financial difficulties, he had been "looking a little bit" for regular employment and estimated that he was capable of making $18-20 per hour, or about $40,000 per year. Touhakis cross-examined both Horne and his accountant but did not submit any evidence of her own. She did, however, indicate her belief that Horne could "do much more than [the minimum child support contributions]."

The superior court granted Horne's motion in part. The court found that Horne's income had fallen severely — a material change of circumstance warranting a modification to his child support obligation. But the court was unwilling to reduce Horne's obligation to the statutory minimum, noting that "Horne cannot expect [his daughter] to finance his speculative ventures." Instead the court found that Horne "agreed to have income imputed to him" and based its modified child support order on his potential income.[3] Although the court relied in part on Horne's testimony that he was capable of earning $20 per hour in full-time employment, the court concluded that Horne "underestimate[d] the market value of his skills and experience" and was capable of earning "at least $40 per hour should he be inclined to work for another person or

---

[2] *See* Alaska R. Civ. P. 90.3(c)(3).

[3] *See* Alaska R. Civ. P. 90.3(a)(4).

company." Based on this hourly wage, the court imputed a gross annual income of $83,200. The court set Horne's monthly child support obligation at $1,050.

Horne filed a motion for reconsideration raising three claims of error. Horne argued that the superior court failed to provide sufficient factual findings to enable appellate review of its imputed income determination. He claimed that the child support modification was partially retroactive and that the court erred by using imputed income instead of actual income for the retroactive portion. And he contended that the court should have reduced his child support obligation to reflect Rule 90.3's health care[4] and retirement[5] deductions. The superior court summarily denied Horne's motion for reconsideration.

Horne appeals, renewing the claims set forth in his motion for reconsideration. Touhakis has not participated in this appeal.

## III. STANDARD OF REVIEW

"We review a modification of child support for abuse of discretion"[6] and "review factual findings regarding a party's income when awarding child support for clear error."[7] "Whether there are sufficient findings for informed appellate review is a

---

[4]     *See* Alaska R. Civ. P. 90.3(d).

[5]     *See* Alaska R. Civ. P. 90.3(a)(1)(B).

[6]     *Childs v. Childs*, 310 P.3d 955, 958 (Alaska 2013) (citing *Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013)).

[7]     *Williams v. Williams*, 252 P.3d 998, 1005 (Alaska 2011) (citing *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003)).

question of law."[8]  Interpretation of the civil rules is a question of law that we review de novo.[9]

## IV.    DISCUSSION

### A.    The Imputed Income Findings Were Insufficient To Allow Appellate Review.

At the evidentiary hearing, Horne accepted the imposition of imputed income and suggested $40,000 per year — or about $20 per hour — as a fair estimate of his potential gross earnings.  The superior court agreed that imputed income was appropriate but concluded that Horne "underestimate[d] the market value of his skills and experience."  The court found that Horne had gained marketable entrepreneurial skills from his experiences running stevedoring and telecommunications businesses, buying and selling real estate, and investing in various businesses.  The court further found that Horne was likely to earn "at least $40 per hour should he be inclined to work for another person or company" and imputed to him a gross annual income of $83,200.  Horne argues that the modification order should be vacated because the court's factual findings were insufficient to enable appellate review on this issue.

Rule 90.3(a)(4) provides:

> The court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed. . . .  Potential income will be based upon the parent's work history, qualifications, and job opportunities.  The court may also impute potential income from non-income or low income producing assets.

---

[8]    *Hooper v. Hooper*, 188 P.3d 681, 685 (Alaska 2008) (citing *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 (Alaska 1997)).

[9]    *Johnson v. Johnson*, 239 P.3d 393, 406 (Alaska 2010) (citing *Duffus v. Duffus*, 72 P.3d 313, 316 (Alaska 2003)).

Although "courts [have] broad discretion to impute income based on realistic estimates of earning potential,"[10] the court's imputed income determination must be based on the four factors listed in the rule: the parent's work history, qualifications, job opportunities, and potential income from non-income or low-income producing assets.[11]

As a threshold matter, Horne appears to suggest that the superior court erred in relying on imputed income at all, given that it "did not make formal or detailed findings that . . . Horne was voluntarily underemployed/unemployed." But Horne not only inadequately briefed this argument but also agreed to have income imputed to him at the evidentiary hearing on this matter. We therefore decline to consider this claim.[12]

Horne also argues that the superior court did "not adequately explain[] how it arrived at an imputed hourly wage of $40.00 per hour with any meaningful analysis of . . . work history, job qualifications, or available job opportunities" — three of the relevant factors under Rule 90.3. Horne notes that "the court did not cite any specific occupation or industry, or find that any jobs currently exist and are available to [him] at

_____

**10**    *Reilly v. Northrop*, 314 P.3d 1206, 1217 (Alaska 2013) (quoting *Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001)) (internal quotation marks omitted).

**11**    *See O'Connell v. Christenson*, 75 P.3d 1037, 1041 (Alaska 2003).

**12**    *See Alaska Fish & Wildlife Conservation Fund v. State*, 347 P.3d 97, 104 n.33 (Alaska 2015) (finding waiver of inadequately briefed issue). Horne also claims the superior court retroactively modified his child support order and argues that the court should have used actual, not imputed, income for the retroactive portion of the modified order. But the modification order, which was effective the day after Horne's motion, was not retroactive. *See* Alaska R. Civ. P. 90.3(h)(2) ("A modification which is effective on or after the date that a motion for modification . . . is served on the opposing party is not considered a retroactive modification."); *see also Kyte v. Stallings*, 334 P.3d 697, 699-700 (Alaska 2014) (applying Rule 90.3(h)(2)). Therefore this argument is without merit.

this wage amount." And he compares his situation to *O'Connell v. Christenson*[13] and other cases where we have held the superior court's findings insufficient to allow appellate review of an imputed income determination.

In *O'Connell* we vacated a child support order which was based on an imputed income assessment that appeared untethered from the evidence presented to the superior court.[14] The obligor father claimed that his adjusted annual income was about $8,000, and he testified that he had worked as a commercial fisherman, had earned an associate's degree in the computer industry, and currently owned two businesses — a computer business and a collection agency.[15] But the court's imputed income determination was based on none of this evidence; instead, "[t]he court's starting point seems to have been that a person working at a fast food counter would earn $20,000 in a year" and that the father "was capable of doing work substantially more remunerative than that."[16] We concluded that these findings were inadequate because it was "not clear that fast food employees [actually] receive $10 per hour, or that [the father was] physically capable of such work. Most importantly, it [was] not clear that employment opportunities exist[ed] . . . that would pay twice this figure to [the father]."[17] Accordingly, we remanded for additional findings, authorizing the superior court to hold an additional evidentiary hearing if necessary or useful to further develop the record.[18]

---

[13]    75 P.3d 1037.

[14]    *See id.* at 1041.

[15]    *Id.* at 1040.

[16]    *Id.* at 1041.

[17]    *Id.*

[18]    *Id.* at 1041-42.

Similarly, in *Koller v. Reft* we vacated a child support award and remanded for additional findings when the superior court "issued no findings explaining how it arrived at the [imputed income] figure" it announced.[19] The obligor father — a doctor — submitted wage statements showing a gross income of $78,396 at his last job.[20] The superior court "intuited that [the father] could make more than $84,000 as a physician in a town the size of Kodiak," and we noted that "[s]ome circumstantial evidence supported this intuition, such as the fact that [he] had previously received the employee of the year award and was made chief of staff at [a] hospital."[21] But though the superior court's intuitions were "understandable," we nevertheless held that there was "no evidentiary support for the court's finding that [the father's] income was in excess of $84,000."[22] We suggested that on remand, valid evidentiary support might take the form of information "concerning the availability of jobs in the area, how much other similarly situated doctors earn, [the father's] historical earnings, and what [the father] actually earned."[23]

And in *Barlow v. Thompson* we vacated an imputed income determination in part because it was based on a single, insufficient data point: the obligor father's testimony that his last full-time job, from approximately one year earlier, had earned him $15 per hour.[24] The superior court master used this figure to find that the father was

_____

[19]    71 P.3d 800, 805 (Alaska 2003).

[20]    *Id.*

[21]    *Id.*

[22]    *Id.*

[23]    *Id.*

[24]    221 P.3d 998, 1003 (Alaska 2009).

capable of earning $31,200 yearly, based on a forty-hour work week, fifty-two weeks per year.[25] We held that the master's findings were inadequate to allow appellate review of the imputed income determination.[26]

We agree with Horne that the imputed income findings in the present case are analogous to the findings we found insufficient in *O'Connell.* Here, as in *O'Connell*, the superior court (1) started with an hourly wage, (2) doubled that wage based on a determination that the parent was capable of earning more, and (3) failed to make findings about the employment opportunities available that would provide this doubled wage.[27] Specifically, the superior court began with the $20 hourly wage suggested by Horne, doubled that wage based on the finding that Horne was "underestimat[ing] the market value of his skills and experience,"[28] and did not suggest any specific jobs or fields where Horne might earn that wage. We cannot affirm the court's imputed income determination based on these findings.

We note that the parties failed to provide evidence that would have allowed the superior court to make more detailed findings. The only relevant evidence before the court was Horne's current (negative) income, his position and salary from 2000, and his descriptions of his various businesses and investments. Horne presented little or no evidence about his educational background, the jobs he is currently qualified to undertake, or the typical salaries earned in those positions. And Touhakis introduced no evidence at all. The parties bear responsibility for this dearth of evidence.

---

[25] *Id.*

[26] *See id.*

[27] *Cf. O'Connell v. Christenson*, 75 P.3d 1037, 1041 (Alaska 2003).

[28] The superior court noted that "admittedly it is difficult to determine the value of [entrepreneurial] skills when trying to impute income."

Nevertheless, the lack of specific findings in the child support modification order prevents us from determining whether the superior court's imputed income determination was clearly erroneous, and we must vacate the order and remand for additional findings regarding the four factors enumerated in Rule 90.3(a)(4).[29] As we noted in *O'Connell*, "[t]he court may find it useful to refer to the Alaska Department of Labor wage statistics for guidance in determining the amount of income to impute."[30] The court is authorized to hold a supplemental hearing if it believes such a hearing will be necessary or useful.[31]

B. **Rule 90.3(a)(1)(B)'s Retirement Deduction Is Not Available When The Superior Court Relies On Imputed Income.**

Horne also claims that the superior court erred by failing to adjust his child support obligation to reflect the voluntary retirement contribution deduction of Rule 90.3(a)(1)(B). Although Horne admits that he "is not currently contributing to a retirement plan," he argues that "[i]f the [superior] court is going to guess at . . . Horne's potential income . . . , [it] should also [assume] that if he [were] an employee, and [were]

---

[29] We also note that the superior court is not required to modify Horne's original child support order if it determines that the reduction in his income is merely "temporary." *See* Alaska R. Civ. P. 90.3 cmt. X.A.

[30] 75 P.3d at 1041; *accord Reilly v. Northrop*, 314 P.3d 1206, 1217-18 (Alaska 2013) ("The superior court ultimately agreed . . . that the average income of workers in 'construction and extraction occupations' in [the obligor's region] (as reported by the U.S. Department of Labor) was the best indicator of [the obligor's] potential income. . . . The court's approach is the type of approach we have instructed the superior courts to use when determining imputed income.").

[31] Horne also notes that the superior court's modified child support order left the health care deduction "to be determined." *See* Alaska R. Civ. P. 90.3(d). On remand, Horne will have the opportunity to present the court with documentary evidence allowing it to calculate the appropriate deduction for his health insurance expenses.

able to participate in [an] employer provided retirement plan, he would do so at the maximum allowed by this rule."

Horne provides no legal support for this claim,[32] which we find contrary to the sound interpretation of Rule 90.3. The provision dealing with deductions for voluntary retirement plan contributions is housed under subsection (a)(1), which concerns *actual* income.[33] In contrast, subsection (a)(4), which concerns imputed income, contains no reference to deductions for retirement plan contributions. Nothing in the rule's plain language, structure, or commentary suggests that the voluntary retirement contribution provision of subsection (a)(1) should be applied to subsection (a)(4). Accordingly, the superior court did not err by rejecting Horne's request for this deduction.

## V.  CONCLUSION

We VACATE the modified child support order and REMAND the case for further proceedings consistent with this opinion.

---

[32]     Horne cites *Miller v. Clough*, but that case involved *actual* contributions to a voluntary retirement plan. *See* 165 P.3d 594, 603 (Alaska 2007).

[33]     *See* Alaska R. Civ. P. 90.3(a)(1)(B).