NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JEREMY L. ENGEBERG, | ) | |
| | ) | Supreme Court No. S-17244 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-17-04542 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| AMY M. ENGEBERG, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1740 – September 4, 2019 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Jeremy L. Engeberg, pro se, Anchorage, Appellant. Justin R. Eschbacher, Law Offices of G. R. Eschbacher, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.     INTRODUCTION

A father appeals a child support order, primarily arguing that the superior court erred by not imputing income to the mother due to her alleged underemployment. Because the superior court did not make any relevant child support findings that we can review, we remand the case for further proceedings.

---

\*     Entered under Alaska Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

### A.    Family Background

Jeremy and Amy Engeberg divorced in March 2017 after almost 14 years of marriage. Jeremy and Amy have two sons. Initially Jeremy and Amy shared legal custody of the boys; Jeremy had primary physical custody and Amy had visitation rights.

### B.    The Parties' Motions To Modify Child Custody And Support

In early October 2017 Amy filed a motion to modify child custody and support. She stated that there had been a change of circumstances because she had obtained a permanent, full-time (37.5 hours weekly) job and a two-bedroom apartment. Amy requested 50/50 shared physical custody of the children, and she also requested a child support modification based on the proposed change in physical custody.[1] She submitted a child support guidelines affidavit, listing her gross monthly wage income and attaching three recent pay stubs to her affidavit to serve as proof. Based on the pay stubs, Amy worked about 30 hours weekly on average and her average gross monthly wage income was less than what she had claimed.

A week later Jeremy — self-represented — filed his own motion to modify custody, visitation, and child support. Jeremy requested sole legal custody and a reduction in Amy's visitation. He also requested an increase in Amy's child support obligation, alleging that his income had decreased and Amy's had increased. But he left Amy's income information completely blank on the child support guidelines affidavit that he submitted along with his motion. A week later Jeremy filed another child support guidelines affidavit, listing Amy's gross monthly income as higher than her pay stubs

---

[1]    *See* Alaska R. Civ. P. 90.3(b)(1) (providing formula for calculating child support award when parents share physical custody).

indicated but including no supporting documentation. In November 2017 an attorney entered his appearance for Jeremy.

The superior court held an evidentiary hearing on the parties' cross-motions over two days in December 2017 and January 2018. The hearing appears to have focused largely on the custody issue. In February 2018 the court issued a modified custody order maintaining joint legal custody but changing physical custody to a "week-on, week-off schedule." The court also issued a notice to the parties' counsel requesting that they submit a proposed order modifying child support within ten days.

Amy submitted a proposed order in early March and served it on Jeremy's attorney by mail. In an accompanying child support guidelines affidavit, she calculated her income by averaging her weekly pay across four recent pay stubs and calculating her average monthly gross pay based on that weekly average. Although Amy's October 2017 motion to modify had stated that she would be working 37.5 hours weekly, and her 2017 child support guidelines affidavit was supported by pay stubs indicating she worked an average of 30 hours weekly, her 2018 pay stubs revealed that she had been working less than 20 hours weekly on average at a wage of $15 hourly. Based on her determination of their respective incomes, Amy calculated that Jeremy should pay her $875.73 monthly in child support.

Objecting to Amy's proposed child support order, Jeremy alleged that she had underreported her income and that she was voluntarily underemployed. He stated that Amy had held previous jobs paying more than she earned in her current position. Supporting this contention, he submitted a 2016 pay stub showing Amy had been paid $20 hourly for 8 hours of work. He also asked the court to impute full-time income to Amy because she had claimed she would be working full time and was capable of doing so. Assuming that Amy was capable of working 40 hours weekly at $15 hourly, Jeremy calculated that he would owe her only $588.92 monthly in child support.

Amy subsequently filed a revised proposed child support order accounting for insurance costs Jeremy had been paying. Based on those costs, Jeremy was entitled to a credit of $146.87 monthly, and he thus would owe Amy $728.86 monthly in child support. Amy then requested, and was granted, an extension of time to respond to Jeremy's objections; she filed her response in early April. Relevant to this appeal, Amy asserted that her current position allowed her to work only up to 30 hours weekly and that there was no support in the record for the proposition that she was able to work full time for $20 hourly. Amy claimed that she had obtained the $20 per hour job that Jeremy referenced only because of her connection to Jeremy. Amy asserted that during her marriage to Jeremy she was a stay-at-home mom and a part-time worker. She stated that "if the court [chooses] to have a recalculation of child support done," she would not object to calculating her gross income based on a 30-hour workweek at her current salary of $15 hourly. Amy's response contains a certification that a copy of it was mailed, presumably to Jeremy's attorney.

The superior court issued an order modifying child support on April 23, 2018. The court apparently adopted Amy's calculations, ordering Jeremy to pay $728.86 in child support monthly, the $875.73 basic monthly support amount less $146.87 for Amy's portion of the children's health insurance costs. The order had neither findings regarding the parties' incomes nor mention of Jeremy's request for income imputation. The order contained a certification that copies were sent to Jeremy, Amy, and their attorneys.

## C. Jeremy's Motion For Reconsideration And Appeal

Although still represented by his attorney, Jeremy filed a motion for reconsideration on August 17, 2018 without his attorney's help or approval. In the motion he asserted that he was representing himself for financial reasons. He asked the court to reconsider its order, claiming that he had received neither Amy's response to his

objections nor the order. He contended that, had he received Amy's response, he would have accepted her "concession" to calculate her income based on a 30-hour workweek. Jeremy also submitted information purportedly demonstrating that Amy met the qualifications for numerous jobs paying at or above $20 hourly.

The superior court denied Jeremy's reconsideration motion the same day it was filed. The court stated that the motion was untimely and that the court's support order and underlying pleadings had been served on Jeremy and his attorney.[2] Shortly after the court denied Jeremy's motion, Jeremy's attorney moved to withdraw. The court later granted the attorney's withdrawal motion.

Now self-represented, Jeremy appeals both the superior court's child support order and its denial of his reconsideration motion. He filed his appeal on September 25, 2018.[3]

---

[2] Jeremy's attorney later stated that he had not received the court's April child support order.

[3] Jeremy's appeal of the superior court's child support order is untimely under Alaska Appellate Rule 204(a)(1) because it was filed more than 30 days after the order was issued and more than 30 days after Jeremy admits he received the order. Because Jeremy raised his substantive arguments in the superior court and Amy had a chance to respond, and because the parties have briefed the substantive issues on appeal without briefing the appeal's timeliness, we conclude that there is no prejudice or unfairness involved in considering his appeal. *See* Alaska R. App. P. 521 (providing that appellate rules "may be relaxed or dispensed with . . . where a strict adherence to them will work surprise or injustice").

Amy argues that we should not review Jeremy's underemployment argument because he forfeited it by not including it in his points on appeal. Amy is correct that, "[i]n general, an issue omitted from an appellant's statement of points on appeal will not be considered by this court." *Oceanview Homeowners Ass'n, v. Quadrant Const. & Eng'g*, 680 P.2d 793, 797 (Alaska 1984). But we have excused such errors when the omitted issue was adequately briefed, raised in the superior court, and

(continued...)

## III.  STANDARD OF REVIEW

"Whether there are sufficient findings for informed appellate review is a question of law" that we review de novo.[4]

## IV.  DISCUSSION

Jeremy argues that the superior court erred when it calculated Amy's income.  He claims that the court should have relied on Amy's 2017 income to forecast her future earnings.  He also claims that Amy is voluntarily underemployed.  He contends that Amy's past employment history indicates that she could work 40 hours weekly at a $20 hourly rate.  Jeremy argues that, at the very least, the court should have accepted Amy's "concession" that she would not object to the court calculating her gross income based on a 30-hour workweek at her current $15 hourly wage.

We have adopted a two-step process that superior courts must follow when imputing income.  "First, the superior court must find that the [parent] is both voluntarily and unreasonably unemployed or underemployed."[5]  This is a discretionary decision and

---

[3]      (...continued)
known to opposing counsel.  *See, e.g.*, *Bibi v. Elfrink*, 408 P.3d 809, 817 (Alaska 2017) ("[S]tanding was raised at trial, was adequately briefed in [the appellant's] reply, and [the appellee] . . . is well apprised of the issue. . . . In this context, we choose to review the superior court's conclusion . . . ." (footnote omitted)).  We also "apply a more lenient standard to [self-represented] litigants." *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) (quoting *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062-63 (Alaska 2005)).  Because Jeremy is self-represented and raised his underemployment argument both in the superior court, where Amy had an opportunity to respond, and in his opening brief, we conclude that the argument has been preserved for review.

[4]      *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015) (quoting *Hooper v. Hooper*, 188 P.3d 681, 685 (Alaska 2008)).

[5]      *Fredrickson v. Button*, 426 P.3d 1047, 1058 (Alaska 2018).

superior courts must consider "the totality of the circumstances."[6] Typically the parent alleging underemployment must make a "prima facie case of voluntary and unreasonable underemployment" before the burden shifts to the other parent to rebut that claim.[7] Assuming the allegedly underemployed parent fails to rebut the prima facie case, the superior court must next determine the amount of income to impute.[8] "[T]he superior court's method for calculating . . . actual earning capacity must be supported by adequate factual findings, 'based upon the [parent's] work history, qualifications, and job opportunities.' "[9]

Although both parties' modification motions sought changes in child support, the evidentiary hearing appears to have focused solely on child custody issues. And the superior court's April child support order contained no factual findings regarding Amy's varying income calculations. We thus cannot determine the basis for the superior court's calculation or whether the court even considered imputation, although Amy's 2017 pay stubs and April 2018 assertion that she would not object to imputation suggest that imputation may be appropriate.

When modifying a child support award the superior court must make adequate findings "to give this court a clear understanding of the . . . decision so as to enable this court to determine the grounds upon which the [superior] court reached its

---

[6]   *See id.* at 1052, 1059.

[7]   *Id.* at 1059 (quoting *Sawicki v. Haxby*, 186 P.3d 546, 549 (Alaska 2008)).

[8]   *See id.* at 1058.

[9]   *Id.* (quoting Alaska R. Civ. P. 90.3(a)(4)).

decision."[10] When a superior court has failed to make such findings, we have remanded to allow findings to be made.[11] We conclude that is necessary in this case.

Because we are remanding the case, we decline to address Jeremy's argument that the superior court erred by denying his untimely reconsideration motion.

## V.     CONCLUSION

We REMAND to allow the superior court to consider making any necessary findings regarding Amy's alleged underemployment and its calculation of Amy's income, to exercise its discretion by choosing whether to impute income to Amy, and to revise its child support order, if necessary. We do not retain jurisdiction.

---

[10]     *Headlough v. Headlough*, 639 P.2d 1010, 1014 (Alaska 1982); *see also O'Connell v. Christenson*, 75 P.3d 1037, 1040 (Alaska 2003) ("A trial court has a duty to enter findings adequate for rational appellate review when it sets a child support obligation.").

[11]     *See O'Connell*, 75 P.3d at 1041 ("The absence of specific findings . . . renders it impossible for this court to determine whether the court was clearly erroneous in its imputation decision. For this reason, we vacate the child support award and remand the question of imputed income."); *Headlough*, 639 P.2d at 1014 ("Since we are unable to determine the reasons for the trial court's decision to increase [the father's] support payments, which would include the facts considered by the court in reaching its decision, the case must be remanded in order to obtain this information.").