NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NOLA L., | ) | |
| | ) | Supreme Court No. S-15918 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3AN-13-00381/ |
| v. | ) | 00382 CN |
| | ) | |
| STATE OF ALASKA, | ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & | ) | AND JUDGMENT* |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | No. 1568 – February 3, 2016 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Laurence Blakely, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. David T. Jones, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee. Paul F. McDermott, Assistant Public Advocate, and Richard K. Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Stowers, Chief Justice, Fabe, Winfree, and Bolger, Justices. [Maassen, Justice, not participating.]

---

\*      Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

A mother challenges the superior court's decision to terminate her parental rights to two children. Because the evidence supports the court's finding that the mother failed to remedy her long-term and severe alcohol problem within a reasonable time, we affirm the termination of parental rights.

## II. FACTS AND PROCEEDINGS

Nola L. and Vince L. had two sons, Julian J., born in 2004, and Vincent L., born in 2006.[1] Both children fall within the definition of an "Indian child" under the Indian Child Welfare Act of 1978 (ICWA).[2] The State of Alaska, Department of Health & Social Services, Office of Children's Services (OCS) has been involved with Nola since before Julian and Vincent were born, and OCS became actively involved with Nola and the two boys in 2013.

Throughout her life Nola has suffered from significant physical and sexual abuse and has struggled with severe addiction, mainly to alcohol. Nola does not dispute her history of addiction, and it is not necessary to recount in detail all of Nola's past struggles. We nonetheless note that Nola began abusing alcohol at a young age, that she has been diagnosed with post traumatic stress disorder (PTSD), and that she has struggled with her addiction for more than 20 years. Her longest period of sobriety has been three years despite repeated attempts at inpatient or outpatient treatment, and since

---

[1]     Pseudonyms are used for all family members. Nola has four other children who are not the subjects of this appeal.

[2]     *See* 25 U.S.C. § 1903(4) (2012). ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902 (2012).

her alcohol-related hospitalization in March 2012, her longest sober period has been 11 months.

OCS was actively involved with Nola and the two boys between April 2013 and the termination trial in March 2015, and during that two-year period, Nola relapsed on three separate occasions. In September 2013, after the first relapse, OCS petitioned to adjudicate Julian and Vincent as children in need of aid (CINA). The boys were placed in a foster home where they remained until the termination trial. They were thriving in the foster home, and the foster parents hoped to adopt the boys.

After OCS removed the boys from Nola's care, Nola entered substance abuse treatment. She completed a 30-day program at Old Minto Recovery Camp and then transferred to long-term residential treatment at Nugen's Ranch. But Nola left Nugen's Ranch before completing the program and subsequently relapsed. Soon after her relapse Nola began treatment at the Ernie Turner Center, but she was removed from that program after she allegedly assaulted a staff member. Nola then decided to address her substance abuse using outpatient resources at her church, but after a few weeks she again relapsed.

On November 26, 2014, OCS petitioned to terminate Nola's parental rights. In October Nola again entered inpatient treatment, this time at the Genesis treatment program in Fairbanks. The Genesis program is a faith-based substance abuse program generally consisting of eight to twelve months of inpatient treatment followed by a year of aftercare. At the time of the termination trial Nola still had at least six weeks of inpatient treatment remaining before she could begin the transition to aftercare.

During the four-day termination trial, Nola recounted her traumatic history and struggles with addiction. She also expressed her belief that she was succeeding at the Genesis program and would be able to maintain sobriety in the future. Nola

discussed therapy she hoped to pursue to address her PTSD, and Nola's former mental health clinician agreed that this therapy could help Nola. Multiple witnesses also testified that they had seen a change in Nola since she entered the Genesis program, and they asserted that she was strongly motivated to recover. Finally, two OCS caseworkers described their experiences with Nola and the boys. Recognizing that Nola acknowledged her problems and wanted to change, they nevertheless noted that due to Nola's severe addiction and inability to maintain sobriety for over 20 years, it would take a significant period of time before Nola could safely resume parenting her children.

In closing argument, Nola did not deny that she needed more treatment. Nola argued that "she has made progress and that there's a good prognosis for her to continue making good progress." She asserted that the Genesis program was different from past unsuccessful treatment attempts because of the program's spiritual base and focus on trauma. Nola stated that in six weeks she would begin aftercare in Anchorage and asserted that she could then begin therapy for her PTSD and begin rebuilding her bonds with Julian and Vincent in aftercare. Nola requested that the court "allow more time" and "grant a continuance" because she had made great progress and there was good cause to continue rather than terminate her parental rights.

After the trial, the superior court found that OCS had met its burden of proof for the termination of Nola's and Vince's parental rights.[3] Vince has not appealed,

---

[3]     Under ICWA and relevant Alaska CINA statutes and rules, parental rights to an Indian child may be terminated at trial only if OCS shows the following:

(1) by clear and convincing evidence that: (a) the child has been subjected to conduct or conditions enumerated in AS 47.10.011 (CINA Rule 18(c)(1)(A)); (b) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so

(continued...)

and Nola appeals the superior court's finding that she failed within a reasonable time to remedy the conduct or conditions that made Julian and Vincent children in need of aid.

## III. STANDARD OF REVIEW

"In a CINA case, 'we review the trial court's factual findings for clear error and its legal determinations de novo.' "[4] "Whether a parent failed to remedy conduct or conditions that placed the child at substantial risk of harm is a factual finding."[5] " 'Factual findings are clearly erroneous if, after a review of the entire record in the light most favorable to the prevailing party, we are left with a definite and firm conviction' that a mistake has been made."[6] "Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh the evidence when the record

---

[3]    (...continued) that the child would be at substantial risk of physical or mental injury if returned to the parent (CINA Rule 18(c)(1)(A)(I)–(ii)); (c) active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family (CINA Rule 18(c)(2)(B)); and

(2) beyond a reasonable doubt, including qualified expert testimony, that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child (CINA Rule 18(c)(4)); and

(3) by a preponderance of the evidence that the child's best interests would be served by termination of parental rights (CINA Rule 18(c)(3)).

[4]    *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 430 (Alaska 2015) (quoting *Emma D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 322 P.3d 842, 849 (Alaska 2014)).

[5]    *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1268 (Alaska 2014) (citing *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011)).

[6]    *Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1239 (Alaska 2015) (quoting *Emma D.*, 322 P.3d at 849).

provides clear support for the superior court's ruling."[7] "Whether factual findings satisfy the requirements of the applicable [CINA] statute is a question of law that we review de novo."[8] "Whether there are sufficient findings for informed appellate review is a question of law."[9]

## IV.   DISCUSSION

Alaska Statute 47.10.088(a)(2) provides that in order to terminate parental rights a superior court must find that the parent:

> (A)   has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
>
> (B)   has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury . . . .

"In making this determination, the court may take into account any fact relating to the best interests of the child,"[10] including the five best-interests factors enumerated in

---

[7]      *Payton S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 349 P.3d 162, 167 (Alaska 2015) (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1268 (Alaska 2008)) (internal quotation marks omitted).

[8]      *Theresa L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 353 P.3d 831, 837 (Alaska 2015) (citing *Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 246 P.3d 916, 920 (Alaska 2011)).

[9]      *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015) (quoting *Hooper v. Hooper*, 188 P.3d 681, 685 (Alaska 2008)) (internal quotation marks omitted).

[10]      *Chloe W.*, 336 P.3d at 1268 (citing AS 47.10.088(b)); s*ee also Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1263 (Alaska 2010) ([T]he superior court . . . is permitted to 'consider any fact relating to the
(continued...)

AS 47.10.088(b).[11] "The superior court is entitled to rely on a parent's documented history of conduct as a predictor of future behavior."[12]

"A reasonable time is statutorily defined as 'a period of time that serves the best interests of the child, taking [into] account the affected child's age, emotional and developmental needs, and ability to form and maintain lasting attachments.' "[13] "[T]his

---

[10]    (...continued)
best interest of the child, including' the statutory factors, when evaluating whether a parent has remedied his or her conduct." (quoting AS 47.10.088(b))).

[11]    The statutory best-interests factors are:

(1)    the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;

(2)    the amount of effort by the parent to remedy the conduct or the conditions in the home;

(3)    the harm caused to the child;

(4)    the likelihood that the harmful conduct will continue; and

(5) the history of conduct by or conditions created by the parent.

AS 47.10.088(b).

[12]    *Sherry R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 332 P.3d 1268, 1274 (Alaska 2014) (quoting *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 903 (Alaska 2003)) (internal quotation marks omitted).

[13]    *Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1240 (Alaska 2015) (quoting AS 47.10.990(28)).

determination must be made on a case-by-case basis and the amount of time considered 'reasonable' will vary."[14]

Nola appeals the superior court's finding that she failed to remedy her substance abuse within a reasonable time. She argues that the trial court "failed to address [her] request for a continuance" and did not address the statutory best-interests factors. Nola also asserts that the court's findings were too cursory and failed to address the credibility of the witnesses who testified at the trial. Finally Nola argues that the record and statutory best-interests factors do not support the court's failure-to-remedy findings and instead "support[] allowing Nola additional time to remedy the situation in this case."

### A.     Nola Did Not Move For A Continuance.

We first note that Nola did not file a motion for a continuance prior to the start of the termination trial; thus there is no denial of a continuance request before us. But during closing argument, Nola's lawyer did argue that in light of her progress she had not had adequate time to remedy the conditions leading to her children being in need of aid:

> [W]e're asking the Court . . . to look at the CINA Rule 18(e) which says the Court may continue a termination trial for good cause. And that's essentially what our case is, that there is good cause here . . . to continue because she's made great progress, and she has a path clearly laid out to continue making that progress and to rebuild the bonds with her children.

---

[14]     *Christina J. v. State, Dep't of Health & Soc Servs., Office of Children's Servs.*, 254 P.3d 1095, 1108 (Alaska 2011).

. . . And for that reason, we think there's good cause here to continue the termination such that the judge not terminate her rights today.

Although Nola referred to CINA Rule 18(e), which provides trial court discretion to continue termination trials, by the time she framed her argument, the termination trial had already occurred. Thus, Nola was not requesting a continuance of the termination trial. Rather, Nola requested a specific trial result: that the court "continue the termination such that the judge *not terminate her rights today*." (Emphasis added.) This argument was linked to her contention that she had not yet received an adequate opportunity to remedy her conduct. We therefore review the superior court's decision that Nola received a reasonable period of time to remedy her conduct and its decision to terminate her parental rights.

## B. The Superior Court Did Not Need To Address The Statutory Best-Interests Factors.

Nola asserts that the superior court's failure-to-remedy finding was "based on an erroneous weighing of the statutory [best-interests] factors in AS 47.10.088(b)." She similarly notes that "[t]he trial court did not specifically address the statutory factors in its oral finding on Nola's remedial efforts . . . . The written order provided no additional information." Nola's arguments are not persuasive.

Alaska Statute 47.10.088(b) provides that when making a failure-to-remedy finding, "the court may consider any fact relating to the best interests of the child." We have noted that "[i]n making this [failure to remedy] determination, the court may take into account any fact relating to the best interests of the child."[15] And we have explained that

---

[15]    *Chloe W.*, 336 P.3d at 1268.

[t]he best interest[s] factors listed in the statute are not exclusive and the superior court need not accord a particular weight to any given factor. Rather, the superior court . . . is permitted to 'consider any fact relating to the best interest[s] of the child, including' the statutory factors, when evaluating whether a parent has remedied his or her conduct.[16]

The superior court's failure-to-remedy finding contains a best-interests analysis. The court found that a substantial amount of time would be necessary for Nola to show that she could stay sober and safely parent her children. Although the trial court did not explicitly refer to the first statutory best-interest factor — "the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs"[17] — the trial court's finding implies that the children could not be returned to Nola's care within a reasonable time.

## C. The Superior Court's Underlying Findings Were Sufficient.

Nola challenges the adequacy of the trial court's findings, noting that although the trial took place over four days and the court heard from multiple witnesses, "the court ultimately made its findings on the record in just fifteen minutes and issued a cursory written order." Nola also argues that the court failed to make adequate credibility findings. She finally argues that despite finding the issues in the case "complex," the court made its failure-to-remedy findings in a short, conclusory statement.

In finding that Nola failed to remedy her conduct, the trial court referred to undisputed evidence of Nola's past alcohol abuse and failed treatment attempts. Because

---

[16] *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1263 (Alaska 2010) (quoting AS 47.10.088(b)) (internal footnote omitted).

[17] AS 47.10.088(b)(1).

that history is undisputed, the trial court's failure to make more explicit credibility findings or more detailed fact findings was not erroneous.[18]  And the superior court expressly recognized that Nola's long-term alcohol problems had led to OCS involvement and CINA adjudication.  The court took note of the undisputed testimony that Nola had exhibited "a cycle of treatment, sobriety, and then relapse."  And the court credited the assessment that Nola "is going to need . . . a substantial period of time to show the ability to stay sober and be able to safely parent the children."  Nola fails to explain why these findings do not support the superior court's failure-to-remedy finding. The trial court pointed to Nola's conduct that put the children at risk of harm and found that at the time of trial, Nola could not yet demonstrate that the conduct had been remedied.  The superior court's underlying findings were thus sufficient to support and facilitate appellate review of a failure-to-remedy finding.

**D.     The Superior Court Did Not Clearly Err In Finding That Nola Failed To Remedy Within A Reasonable Time The Conduct That Made Her Children In Need Of Aid.**

The crux of Nola's appeal is her assertion that the superior court clearly erred in finding that she failed to remedy, within a reasonable time, the conduct that put her children in need of aid.  Nola points to the statutory best-interests factors and argues that each factor supports providing her additional time to show that she had remedied her conduct.

---

[18]     *Cf. Samuel H. v. State, Office of Children's Servs.*, 175 P.3d 1269, 1274 (Alaska 2008) ("When a trial court discredits a witness's testimony but fails to make specific findings on credibility we will remand to the trial court to make such findings or to reverse its decision.").

## 1. The likelihood of returning the child to the parent within a reasonable time based on the child's age or needs

Nola argues that AS 47.10.088(b)(1), the likelihood of returning the children to her care within a reasonable time, weighs in favor of providing her additional time to remedy the conduct that made her children CINA because the trial testimony established that she had been improving and succeeding at the Genesis treatment program. Nola argues that the superior court erroneously concluded that she would need a substantial period of time to show that she could be a safe and sober parent because she would "be able to resume parental responsibilities on a gradual basis" when she returned to Anchorage for aftercare in just six weeks. She finally asserts that she had a high likelihood of success at Genesis and that the court's finding that she needed substantial time "was based on an implication that Nola would not succeed at Genesis."

Nola's arguments are not persuasive. First, it is unclear whether Nola was going to return to Anchorage for aftercare in only six weeks. The State asserts that Nola "had at least three more months of inpatient treatment to complete before she could even begin her year-long aftercare." The trial testimony established that Nola needed at least six weeks to finish her treatment plan in Fairbanks and to develop a plan to transition to aftercare in Anchorage. And even if Nola were to return to Anchorage in only six weeks, she does not argue that her children would be returned to her care at that time. An OCS caseworker testified that Nola would need at least a couple of years to show that her children could be safely returned to her care.

Nola fails to establish that the superior court's finding that she would require a substantial period of time to show that she could safely parent was clearly erroneous. Moreover, the superior court found that it would not be in the children's best interests to delay permanency because they wanted to be adopted and were in a positive

pre-adoptive foster home. Thus, AS 47.10.088(b)(1) supports the superior court's conclusion that Nola failed to remedy her conduct within a reasonable time.

### 2. The amount of effort by the parent to remedy the conduct or conditions in the home

Nola argues that her efforts to remedy her conduct weigh in favor of providing her additional time under AS 47.10.088(b)(2) because she cooperated with OCS, she was honest and sincere in her attempts to follow her case plan, and she was proactive and engaged in her recovery at the Genesis program. The evidence establishes that Nola made sincere and significant attempts to remedy her conduct. OCS recognized Nola's willingness to work on her treatment and her well-intentioned recovery attempts. The superior court expressly recognized Nola's effort, noting that "[s]he clearly [is] trying her best to succeed in her case plan." This factor weighs in her favor.

### 3. The harm caused to the child and the likelihood that the harmful conduct will continue

Nola recognizes that she caused her children harm, but she argues that "the record demonstrates that [she] was succeeding at Genesis and had a good prognosis for continued success in aftercare." She maintains that AS. 47.10.088(b)(3) and (4), which address the harm caused to the child and the likelihood that the harm will continue, actually weigh in her favor. Nola asserts that though her relapses were preventing her from effectively parenting her children, her risk of relapse was low at the time of trial because she was developing skills to avoid relapse and was addressing her PTSD and past trauma. The superior court found Nola's testimony "very optimistic" and found "nothing to question in terms of her testimony," but it also took note of Nola's past history and "cycle of treatment, sobriety, and then relapse."

Nola does not dispute that she harmed her children, and she does not argue that the superior court incorrectly assessed her unsuccessful treatment history. Nola

presented evidence at the termination trial to support her efforts at recovery, but the evidence of Nola's substance abuse history, relapses, and failure to maintain sobriety is undisputed.[19]  Thus, the trial court had before it evidence to support a conclusion that Nola was likely to fail in her most recent sobriety attempt and harm the children in the future.  The evidence in the record does not support Nola's assertion that she is unlikely to harm her children in the future.

### 4.     The history of conduct or conditions created by the parent

Nola finally argues that AS 47.10.088(b)(5), regarding the history of her conduct, weighs in favor of providing her more time to remedy because she had cooperated with OCS and was honest about her alcohol problem.  Nola recognizes her relapse history, but argues that relapse is part of recovery.  Finally, Nola asserts that she has consistently desired what was best for her children.

Nola may have been honest with OCS and desired what was best for her children, but her history contains numerous failed recovery attempts and consistent harm to her children. The evidence in this case established that Nola was unable to care for the boys on numerous occasions.  And despite receiving many additional opportunities to participate in treatment so that she could care for her children, Nola continued to relapse. This factor does not weigh in Nola's favor.

---

[19]     Nola testified that she had over-reported her inpatient treatment attempts, but she did not dispute that she had attended multiple treatments and had failed to maintain extended sobriety.

**5. Our precedent supports the conclusion that the superior court did not clearly err.**

When determining whether Nola remedied her conduct, the superior court was not required to give more weight to any particular factor,[20] and as explained above, many of the factors do not support Nola's position. Nola also fails to discuss our decision in *Sherry R. v. State, Department of Health & Social Services, Division of Family & Youth Services*.[21] In *Sherry R.* a mother with a long history of substance abuse problems and treatment failures maintained sobriety for approximately a year before a termination trial.[22] The superior court commended the mother for her sobriety but noted that the sobriety was still new and the mother was therefore not completely available for her children.[23] We explained that "even though Sherry may have made strides towards remedying her conduct, the trial court could properly find that Sherry failed to address her substance abuse problem within a reasonable time. The superior court is entitled to rely on a parent's documented history of conduct as a predictor of future behavior."[24]

Like Sherry, Nola had a long history of substance abuse, unsuccessful treatment attempts, and relapses. The superior court noted Nola's cycle of drinking, treatment, and relapse, and the significant time it would take before she became fully available to parent her children, and the superior court's underlying findings were supported by evidence in the record.

---

[20] *Barbara P.*, 234 P.3d at 1263 (quoting AS 47.10.088(b)).

[21] 74 P.3d 896 (Alaska 2003).

[22] *Id.* at 898-900, 902.

[23] *Id.* at 902.

[24] *Id.* at 902-03.

Nola does not discuss *Sherry R.*, and does not argue that the superior court could not rely on her documented history.[25] At the time of the termination trial Nola had been sober for four to five months while participating in inpatient treatment. Since 2012 Nola had maintained sobriety only for periods up to 11 months before she relapsed. Based on this history the superior court found that Nola was not available to parent her children and would need a substantial period of time before she could safely resume parenting her children. As we did in *Sherry R.*, we conclude that the superior court did not clearly err in relying on Nola's substantial history of severe addiction and finding that she had not remedied her conduct.

## V. CONCLUSION

We AFFIRM the trial court's termination of Nola's parental rights.

---

[25] Nola does cite to *Sherry R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 332 P.3d 1268 (Alaska 2014), a later case terminating Sherry's parental rights with regard to another child.