*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AMANDA M. VOGUS, | ) | |
| | ) | Supreme Court No. S-17102 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-05822 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ERIC L. VOGUS, | ) | |
| | ) | No. 7436 – April 3, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Dan Allan, Law Offices of Dan Allan & Associates, Anchorage, for Appellant. David W. Baranow, Law Offices of David Baranow, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A mother appeals the superior court's entry of a child support order based on imputed income, arguing that the court's finding of her imputed gross income was based on faulty weekly hour and hourly rate determinations. We conclude that by going well beyond the mother's previous weekly hours and hourly rate without any evidence or findings about commensurate job opportunities and the mother's abilities and

qualifications for those opportunities, the superior court failed to follow our case law. We therefore vacate the child support order and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

After a 2014 divorce Amanda and Eric Vogus shared custody of their two children. But in October 2016 the superior court gave Eric primary physical custody of the children and required Amanda to document her earnings for a child support calculation.[1] Amanda did not provide sufficient information by affidavit, and in March 2018 the court held an evidentiary hearing. Eric requested that the court impute income to Amanda.[2]

Amanda testified that she started massage therapy school when she separated from Eric and that after graduating in October 2015, she found a massage therapist job at a local gym. Amanda stated that she worked 20 to 25 hours weekly; all of her pay stubs in the record show a $19 hourly rate. Amanda stated that massage therapy took a physical toll on her wrists, limiting her to a part-time schedule. She stated that her training had involved doing massage therapy for five continuous hours but that the gym expected six continuous hours, which she found too taxing. She said that most massage therapists do not work full time because of the physical demands. Amanda said she quit working at the gym in June 2017.

Amanda testified that from December 2016 to September 2017 she also ran her own massage therapy business in a room rented at a salon and that her net earnings

---

[1]    *See* Alaska R. Civ. P. 90.3(a) (providing for child support award based on non-custodial parent's adjusted annual income).

[2]    *See* Alaska R. Civ. P. 90.3(a)(4) ("The court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed. . . . Potential income will be based upon the parent's work history, qualifications, and job opportunities.").

were minimal. Amanda said that her massage license lapsed at the end of September 2017; she had needed to take continuing education classes to renew her license but had chosen not to do so. Amanda also said that her other work experience had been part time in customer-service positions before working as a massage therapist. She recalled earning about $12 hourly in those jobs. Amanda said that from September to December 2017 she was supported by a partner and did not work.

Amanda testified that while working as a massage therapist, she also trained as an amateur bodybuilder and took Tae Kwon Do classes. She said that she was pursuing a "fitness career" and did not seek other work to supplement her massage therapy income during this time. Amanda said that in December 2017 she suffered an Achilles tendon rupture, requiring eight months to a year of recovery. According to Amanda the injury prevented her from standing for long periods of time and impacted her mobility, limiting her ability to work. Her testimony suggested that she did not intend to seek work of any kind until she felt her injury was fully healed. She stated that after recovering she would like to renew her massage therapy license and retrain to practice in a less physical discipline, such as "touch therapy and energy work."

At the close of the hearing, the superior court made oral findings regarding income imputation to Amanda. The court first found that Amanda was voluntarily and unreasonably underemployed, imputing to her full-time employment of 40 hours weekly. The court found that Amanda's "work during the period in question and . . . time leading up to that schooling was exclusively for being a massage therapist." The court acknowledged Amanda's testimony that she had let her massage therapy license lapse and that the impact of massage therapy on her body limited her work in that field. But the court noted that she had "offered a little bit of testimony that perhaps she will return to that [line of work] and that there may be options for her to return to that."

The court found that Amanda's pursuit of a bodybuilding career was not a "reasonable reason" to base her income on a part-time work schedule. The court found that, although Amanda had ruptured her Achilles tendon, she still was able to work; the court reasoned that many people work full time with similar injuries.

To determine an hourly wage rate, the court relied on an Alaska Department of Labor and Workforce Development wage table Eric had submitted. The table provided wages by percentile in Southcentral Alaska for various "healthcare support" occupations, including massage therapy. Amanda's previous $19 hourly wage rate placed her in the 10th percentile for massage therapists. But the court imputed to her a $32.52 hourly wage rate corresponding to the 25th percentile. The court did not use the $40.92 hourly average wage rate Eric had advocated due to Amanda's limited work experience.

Amanda appeals the resulting child support order.

## III. DISCUSSION

### A. Income Imputation

Alaska Civil Rule 90.3(a)(4) authorizes the superior court to calculate a parent's potential income if that parent is "voluntarily and unreasonably . . . unemployed or underemployed"; the calculation must be "based upon the parent's work history, qualifications, and job opportunities."[3] Amanda does not challenge the superior court's finding that she was voluntarily and unreasonably unemployed. Amanda argues only that her work history, qualifications, and job opportunities as established at the evidentiary hearing do not support the court's income calculation.

---

[3]     Alaska R. Civ. P. 90.3(a)(4).

"The ultimate goal of a [child] support determination 'is to arrive at an income figure reflective of economic reality.' "[4] In *Fredrickson v. Button*[5] we attempted to clarify when a superior court needs to make Rule 90.3(a)(4) findings for imputing income. At first blush, the rule we articulated could be seen as saying that regardless of context, once the court determines an obligor is voluntarily unemployed or underemployed (both of which we refer to generally as underemployment), the court is not required to make explicit findings regarding the availability of jobs and the obligor's ability to perform such jobs before imputing income.[6] But the actual context for our ruling was far narrower; when we explained the case law underpinning that rule we distinguished between two scenarios, only one of which was at issue and intended to be covered by the rule.[7]

The covered scenario is when an obligee points to an obligor's previous employment and related income as a prima facie case for underemployment, and in that context we stated that "the court can impute income based on the obligor's previous earnings unless the obligor demonstrates that she would not be able to achieve a similar income."[8] The second, distinguishable scenario is when the court imputes income "based not on previous income, but on arbitrary multiplication and 'the . . . court's intuitions'

---

[4]     *Farr v. Little*, 411 P.3d 630, 635 (Alaska 2018) (quoting *McDonald v. Trihub*, 173 P.3d 416, 427 (Alaska 2007)).

[5]     426 P.3d 1047 (Alaska 2018).

[6]     *Id.* at 1060-62.

[7]     *Id.*

[8]     *Id.* at 1060-61.

about the obligor's earning capacity, without any evidentiary support."[9] We then went on to "reaffirm" the burden-shifting mechanism for imputing income based on previous employment:

> The obligor's previous earnings can serve as prima facie evidence of her earning capacity, and the burden is on the obligor to show that no job opportunities are available to her that would pay an equivalent amount. The superior court may not, however, impute as income an entirely arbitrary amount with no support in the record, or impute income based on previous earnings where there is no indication that the obligor is currently unemployed or underemployed.[10]

Applying the burden-shifting framework in this case, (1) there was a prima facie case that Amanda was underemployed and that she could earn wages consistent with her previous employment as a massage therapist, and (2) Amanda did not rebut the prima facie case. That leads to imputed income at the hourly rate and number of hours Amanda previously worked as a massage therapist without the need for findings on the Rule 90.3(a)(4) factors referenced in the imputation context: the parent's work history, qualifications, and job opportunities. On that basis the superior court could have imputed income to Amanda based on her previous massage therapy work at $19 hourly for a 20-25 hour week. Using a 25-hour workweek would lead to about $475 weekly, or about $24,700 yearly, and would be generally consistent with Amanda's prior financial information and tax returns presented to the court.

---

**9** *Id.* at 1061 (footnote omitted) (citing and discussing *O'Connell v. Christenson*, 75 P.3d 1037, 1041 (Alaska 2003); *Horne v. Touhakis*, 356 P.3d 280, 283 (Alaska 2015)).

**10** *Id.* at 1062 (reaffirming burden-shifting mechanism articulated in *Sawicki v. Haxby*, 186 P.3d 546, 548-49 (Alaska 2008)).

But the superior court went well beyond that, apparently relying on the generalized labor statistics Eric had submitted showing various hourly rate percentiles for massage therapists. The labor statistics showed that the 10th percentile wage rate was about $19.50 hourly; the 25th percentile wage rate was about $32.50 hourly; the median (midpoint) wage rate was about $39.25 hourly; the mean (average) rate was about $41 hourly; the 75th percentile wage rate was about $54.50 hourly; and the 90th percentile wage rate was about $60 hourly. Amanda's previous $19 hourly income as a new massage therapist corresponded almost exactly to the 10th percentile wage rate reflected in the labor statistics.

Eric argued during the hearing that the superior court should adopt the average rate of $41 hourly. But despite no evidence that Amanda had massage therapist qualifications or actual job options to earn more than the 10th percentile $19 hourly rate she previously had earned, and despite expressly acknowledging "the short amount of time [Amanda] ha[d] actually worked as a physical [sic] therapist," the court nearly doubled her historical hourly rate by imputing the $32.50 rate for massage therapists in the 25th percentile of hourly earnings. And by imputing more hours than she previously had worked on a weekly basis, the court more than doubled Amanda's historical massage therapy annual income — to about $67,500 — to calculate her child support obligation.

The mere existence of labor statistics does not give the superior court license to disregard actual historical information; otherwise the court just as easily could have selected a higher statistical point for massage therapists, such as Eric's suggested average hourly rate ($41), the midpoint hourly rate ($39), the 75th percentile hourly rate ($54), or even the 90th percentile hourly rate ($60). Any one of those rates, like the court's chosen rate, would be arbitrary and based on nothing more than the court's intuition. *Fredrickson* prohibits this; nothing about Amanda's limited massage therapy

work at $19 hourly for up to 25 hours weekly gives rise to a reasonable inference that she suddenly could find massage therapy work at $32.50 hourly for 40 hours weekly. The court needed to make specific findings about Amanda's work history, qualifications, and job availability before imputing income beyond the prima facie evidence of her previous earnings. Because the support order is unsupported by necessary findings, it must be vacated.

B.      Timing Issue — Order's Effective Date

When Eric filed his motion to modify custody and child support in late March 2016, the parents shared legal and physical custody and he was obligated to pay child support under the shared custody framework.[11] Eric sought sole legal and physical custody of the parties' two children. Eric also requested an expedited hearing and decision on interim custody. On April 15 the superior court granted Eric interim primary custody pending a final custody decision.

The superior court held a final custody hearing in July. At the conclusion of that hearing, the court issued an oral decision granting Eric primary physical custody (with generous visitation to Amanda), but maintaining joint legal custody. This was followed by an October written order. In that written order the court stated that the custody modification required a change in child support obligations and ordered that Amanda would be the obligor parent as of April 1, 2016, "on the first day of the month following the filing of [Eric's] motion for modification." The ultimate support order issued in April 2018 was entered effective April 1, 2016.

---

[11]      *See* Alaska R. Civ. P. 90.3(b) (providing guidelines for support obligation calculations when physical custody is shared, divided, or hybrid).

Absent a de facto change in physical custody before the April 15 interim custody order, under our 2018 *Geldermann v. Geldermann* decision[12] it was legal error to retroactively order Amanda to pay support to Eric as if he had primary physical custody when the parties still were acting under shared custody and support orders.[13] Perhaps there is evidence of a de facto change in custody on or before April 1, prior to the April 15 interim custody order, but it is not obvious to us and the parties have not discussed this issue. Because the court did not have the benefit of *Geldermann* when entering the final support order and *Geldermann* was issued only about two months before Amanda's opening brief in this appeal, the court should consider this issue on remand.

## IV. CONCLUSION

The child support order is VACATED and the matter is REMANDED for further proceedings.

---

[12]    428 P.3d 477 (Alaska 2018).

[13]    *See* 428 P.3d at 485-88 (discussing rule against retroactive support orders but noting change in custody obviously necessitates change in support orders, and holding that when parent moves to modify custody based on existing de facto custody change, retroactivity bar does not prevent change in support effective when modification motion was served on other parent).