NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JULIA TAUBERT, f/k/a Julia Mouritsen, ) | |
| ) | Supreme Court No. S-17621 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-15-05986 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| JASON MOURITSEN, ) | AND JUDGMENT* |
| ) | |
| Appellee. ) | No. 1831 – May 26, 2021 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Robin A. Taylor, Law Office of Robin Taylor, Anchorage, for Appellant. Jason Mouritsen, pro se, Palmer, Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

I.    **INTRODUCTION**

A mother appeals a child support order imputing her income. Her earnings are consistent with her employment history, but the superior court found her to be voluntarily and unreasonably underemployed and imputed an income in excess of any wage she had previously earned. Although the superior court has significant discretion to impute income in cases of voluntary and unreasonable underemployment, the amount

---

\*    Entered under Alaska Appellate Rule 214.

of income imputed must be supported by the record and reflect economic reality. In the recent case of *Vogus v. Vogus*, we vacated the superior court's decision to impute an income that significantly exceeded a party's historical earnings.[1] Based on the facts in this case, we reach the same result here.

## II.    FACTS AND PROCEEDINGS

Julia Taubert and Jason Mouritsen married in 2003. After the birth of their second child, the couple agreed that Mouritsen would focus on his military career while Taubert focused on raising their young family. For a short time, Taubert ran an in-home daycare. She later worked as a pharmacy technician and then as a part-time lifeguard. At one point Taubert stopped working entirely and returned to school full-time, completing a bachelor's degree in history in 2012.

Taubert and Mouritsen divorced in 2016. The superior court granted shared legal custody of their two children. Physical custody would be shared 50/50 "[i]f the parties live in the same community," but primary custody would go to Mouritsen — with custodial time during school holidays for Taubert — if the parties moved to separate communities.

After the divorce Taubert worked part-time at the Alaska Dinner Factory, earning $11 per hour. She left that position to earn a "somewhat higher" wage at the Anchorage Dome, where she worked — first as a summer camp counselor and then at the front desk — until it collapsed in January 2017. Taubert was unemployed for a month, waiting for the Dome to be repaired. When its reopening was delayed she found work at a medical office in Anchorage, making $13 per hour as a receptionist.

After the Air Force ordered Mouritsen to South Carolina, Taubert followed to maintain shared custody of the children. She testified that she applied to "more than"

---

[1]    460 P.3d 1220 (Alaska 2020).

20 positions, both by responding to online job postings and handing out resumes. This yielded a job as a receptionist at a dental office where she made $11 per hour for "close to" 30 hours per week. At the time of the superior court's decision she was making $13.38 per hour as a cashier at the Air Force base commissary. Taubert testified that she averaged 32 hours per week, but at times had worked up to 40 hours, at this position. Her yearly income for the purposes of child support determination was calculated as $22,264.

In May 2019 Mouritsen moved to modify his child support obligations and impute income to Taubert.[2] Mouritsen argued that Taubert was "voluntarily and unreasonably underemployed" based on three key facts: (1) she was overqualified for the cashier position due to her college degree; (2) it was unreasonable for her to work fewer than 40 hours per week; and (3) there were jobs in the area available to Taubert that would pay more and allow her to work more hours.[3] To support these claims, Mouritsen supplied the court employment figures from the Bureau of Labor Statistics and a printout of online job postings.

Mouritsen requested that the court impute an income to Taubert of $45,000. According to statistics he proffered, this was "between the first and second quartile" of income for "white women 25 . . . or older with a bachelor's degree." In response, Taubert pointed to figures from the Census Bureau showing a median household income in her geographical area of $23,000 for single women with children. Taubert also argued

---

[2] Alaska Civil Rule 90.3(a)(4) allows the court to "calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed."

[3] Mouritsen also argued that income should be imputed due to Taubert's "perjury" in inconsistently reporting her income to the court. The superior court did not rely on this argument in making its order, and it was not central to the rest of the proceedings.

that if a full-time income were imputed, the court should take into account the cost of childcare and healthcare. She stated that she was earning the highest hourly wage of her career and receiving better benefits than in her previous jobs.[4]

The superior court nevertheless found Taubert to be "voluntarily and unreasonably underemployed." The court emphasized Taubert's college degree and work history in its decision, describing her as "clearly smart, . . . well-educated, . . . well-spoken, [and with] a lot of skills." Accordingly it imputed an income of $40,118 — the advertised salary for a shift supervisor at a CVS store, one of the online job postings Mouritsen had provided. The court considered this the "middle of [the] range" of positions for which Taubert was qualified. It declined to start creating deductions for childcare and healthcare.[5]

Taubert appeals the subsequent order modifying child support.

## III.  STANDARD OF REVIEW

We review "[a] trial court's decision whether to impute income . . . for abuse of discretion," but review the amount imputed for clear error.[6] "A finding is clearly erroneous if we are 'left with a definite and firm conviction that the trial court has made a mistake.' "[7]

## IV.  DISCUSSION

When the superior court imputed income to Taubert, it emphasized "the

---

[4]     As a federal employee at the military commissary, Taubert received benefits including paid leave, sick pay, medical insurance, and retirement benefits.

[5]     The court included only the deductions for taxes mandated by Rule 90.3(a)(1)(A).

[6]     *Fredrickson v. Button*, 426 P.3d 1047, 1052 (Alaska 2018).

[7]     *Id.* (quoting *Heustess v. Kelley-Heustess*, 259 P.3d 462, 468 (Alaska 2011)).

significance of a parent's duty to meet his or her child support obligations," which must be prioritized "over even legitimate decisions to be voluntarily unemployed or underemployed." We acknowledge the importance of that duty, but we reiterate that income imputation should not be used to "rigorously command pursuit of maximum earnings."[8] Rather, "[t]he ultimate goal of a [child] support determination 'is to arrive at an income figure reflective of economic reality.' "[9] In this case the superior court focused on speculative evidence of what Taubert might be able to earn and ignored historical evidence of what she had actually earned. This departure from economic reality is clear error.

Under Alaska Civil Rule 90.3(a)(4), the superior court may base child support payment calculations on "the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed." Alaska courts generally impute income when a parent's voluntary change in employment results in a reduced income.[10] If one parent can point to the other's "previous employment and related income as a prima facie case for underemployment," the burden shifts to the second parent to demonstrate a current inability to achieve a similar income.[11] But there is no such burden shifting "when the court imputes income 'based not on previous income, but on arbitrary multiplication and "the . . . court's intuitions" about the obligor's earning capacity,

---

[8]     *Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001).

[9]     *Vogus v. Vogus*, 460 P.3d 1220, 1222 (Alaska 2020) (alteration in original) (quoting *Farr v. Little*, 411 P.3d 630, 635 (Alaska 2018)).

[10]     *See, e.g.*, *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008) (affirming superior court after it imputed income to parent who left one job for another paying half as much).

[11]     *Vogus*, 460 P.3d at 1222.

without any evidentiary support.' "[12]  Taubert has not taken a lower-paying job, and Mouritsen has not made a prima facie case of underemployment based on her "previous employment and related income,"[13] which are consistent with her current position.  The burden of showing that Taubert was voluntarily and unreasonably underemployed thus remained with Mouritsen.

Even if a prima facie case of underemployment is made, the superior court may not arbitrarily impute income "based on nothing more than the court's intuition."[14]  In *Vogus v. Vogus* a parent chose not to work full time in order to pursue a bodybuilding career, which the court held constituted voluntary and unreasonable underemployment.[15]  But instead of imputing income based on the parent's historical earnings, the court picked an income level from a table of labor statistics.[16]  We vacated the income imputation order, explaining that the court must "make specific findings about [the parent's] work history, qualifications, and job availability before imputing income beyond the prima facie evidence of her previous earnings."[17]

Like in *Vogus*, the superior court imputed income to Taubert based in part on statistical information.  Unlike in *Vogus*, the superior court also looked at individual job opportunities in the form of online job postings and explicitly considered Taubert's employment history and education.

---

[12]     *Id*. (alteration in original) (quoting *Fredrickson,* 426 P.3d at 1061).

[13]     *Id.*

[14]     *Id.* at 1223.

[15]     *Id.* at 1221-22.

[16]     *Id.* at 1222.

[17]     *Id.* at 1223.

But when we have upheld orders imputing income in excess of the parent's historical earnings it has been on more concrete evidence that the underemployment was voluntary. In *Helen S.K. v. Samuel M.K.* — another case where a parent worked only part-time — the trial court imputed an income reflecting full-time employment at the same hourly wage.[18] This determination was supported by testimony from the parent's supervisor, who stated that more work hours were available if she chose to work them.[19] But Mouritsen did not argue, much less produce evidence, that Taubert could increase her hours at the commissary. He instead asserted that Taubert should be required to leave her current job for one of the online postings he had supplied to the court but offered no specific evidence that she could obtain any of the advertised positions.

We have vacated orders that impute income above historical earnings when they are unsupported by specific findings.[20] In the similar case of *Thompson v. Thompson*, the superior court imputed a higher income to a parent, explaining that she was "relatively young . . . and in good health," with "a college degree and skills that make her employable."[21] We recognized that the superior court had rightfully considered the parent's "qualifications and job opportunities in calculating a higher income for child

---

[18] 288 P.3d 463, 477-78 (Alaska 2012).

[19] *Id.* at 477.

[20] *Horne v. Touhakis*, 356 P.3d 280, 284 (Alaska 2015) (concluding there were insufficient findings to impute income when "the superior court (1) started with an hourly wage, (2) doubled that wage based on a determination that the parent was capable of earning more, and (3) failed to make findings about the employment opportunities available that would provide this doubled wage"); *O'Connell v. Christenson*, 75 P.3d 1037, 1040-41 (Alaska 2003) (noting "[a] trial court has a duty to enter findings adequate for rational appellate review" and vacating an income imputation order due to "absence of specific findings").

[21] 454 P.3d 981, 993 (Alaska 2019) (alteration in original).

support purposes than her work history might indicate."[22]  But we vacated the court's order because it failed to make "specific findings on the particular skills or qualifications [her] degree and experience gave her, or on the availability of jobs matching those qualifications in [her hometown]."[23]

The superior court's findings similarly lack the requisite specificity.  The court focused on Taubert's work history and college degree, but that work history included no clear managerial experience, and a college degree alone does not guarantee employment.  The superior court took evidence of specific job opportunities in Taubert's area, and even noted particular jobs for which it believed she was qualified.  But the only evidence that those jobs were available to Taubert was a printout of online job postings, Mouritsen's assertion that she was qualified for them, and the superior court's own intuitions about her qualifications.

Under the "totality of the circumstances," we cannot conclude that the level of income imputed to Taubert was reflective of economic reality based on the record before the superior court.[24]  It was clear error to impute income to Taubert based on the salary of a CVS store shift supervisor, a position which she had never held.[25]

---

[22]     *Id.*; *see also Petrilla v. Petrilla*, 305 P.3d 302, 307 (Alaska 2013) (explaining that imputing income to someone gainfully employed requires "express finding[s]" that the person "was capable of earning more . . . , that higher-paying jobs were available . . . , or that [the person] took a position paying less than what was available").

[23]     *Thompson*, 454 P.3d at 993.

[24]     *See Hope P. v. Flynn G.*, 355 P.3d 559, 567 (Alaska 2015) (explaining that courts must consider totality of the circumstances when deciding whether to impute income).

[25]     We take no position on whether it would be appropriate to impute income
(continued...)

When the court announced its decision, it explained that "the idea behind imputing income is to goad people into full-time employment." That idea makes sense if the party being goaded has deliberately reduced her income or is unemployed and making no efforts to find employment. It makes less sense when the party being goaded has what appears to be one of the best and most stable jobs she has ever held.

Taubert's argument that the superior court should have imputed deductions along with income is moot. Because we vacate the superior court's order imputing income and the order modifying child support, we need not consider hypothetical deductions to an imputed income that is no longer effective.

## V.    CONCLUSION

We VACATE the superior court's order imputing income to Taubert and its subsequent order modifying child support.

---

[25]    (...continued)
based on a 40-hour work week at Taubert's current wage rate. If the superior court were to find that those extra hours are available to Taubert and that she is voluntarily and unreasonably refusing to work them, the court might be justified in imputing income. *See* Alaska R. Civ. P. 90.3(a)(4); *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 477-78 (Alaska 2012).